**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLORADO**

---

DAVID L. HILDEBRAND,

      Plaintiff,

vs.

STECK MANUFACTURING
COMPANY, INC., ATC PRODUCTS
INC., CORNWELL QUALITY TOOLS
COMPANY, MAC TOOLS, MATCO
TOOLS, SNAP-ON TOOLS
COMPANY, TOOLS USA
EQUIPMENT COMPANY,

      Defendants.

Case No. 02-WY-1125-AJ (OES)

---

—

## ORDER DENYING CROSS MOTIONS FOR SUMMARY JUDGMENT

---

—

The above-entitled matter comes before the Court on plaintiff David L. Hildebrand's

Supplemental Motion for Summary Judgment, as well as the Renewed and Supplemental

Motion for Summary Judgement filed by the above-named defendants.  After careful

consideration of both motions, the materials filed therewith and in opposition thereto, the

applicable law, and being otherwise fully advised in the premises, the Court **FINDS** and

**ORDERS** as follows:

**Factual and Procedural Background**[1]

The issues in this case implicate U.S. Patent No. 5,737,981 (hereinafter the "'981 Patent") issued to plaintiff David L. Hildebrand on April 14, 1998 (hereinafter "plaintiff" or "Mr. Hildebrand").  Mr. Hildebrand invented the device in question, a tool called the "Screw Off."  The "Screw Off" is a threaded socket-type tool capable of removing locking lug nuts that, for a number of reasons, have been rendered unremovable.  While this device has been called "simple," *see Defendant's Initial Brief in Support of Summary Judgment* at 1, the seven years of litigation accompanying it has not.  Shortly after filing a patent application with the United States Patent and Trademark Office (USPTO),  Mr. Hildebrand learned that defendant Steck Manufacturing Company, Inc. (hereinafter "defendant") had begun manufacturing and selling a tool virtually identical to the "Screw Off," called the "Lug Off."  On April 14, 1998, the '981 Patent, entitled "Removal Device for Threaded Connecting Devices," issued to Mr. Hildebrand.[2]

---

[1]  In light of time constraints, and to avoid redundancy, the Court eschews an exhaustive chronicling of extraneous facts.  A heavily-detailed recitation of facts can be found in the Court's Order Granting Plaintiff's Motion for Reconsideration, *Hildebrand v. Steck Mfg. Co.*, No. 02-WY-1125-AJ (OES) (D. Wyo. July 15, 2004).  *See also Hildebrand v. Steck Mfg. Co.*, 279 F.3d 1351, 1353-54 (Fed. Cir. 2002).

[2]  After rejecting Mr. Hildebrand's patent application three times, Patent Examiner James G. Smith finally issued on the fourth application (third amended application).   Mr. Hildebrand submitted his first application on September 20, 1995, with 14 claims related to a "removal device for threaded connecting devices."  Examiner Smith rejected all 14 claims in an Office Action Summary dated June 10, 1996, citing two grounds:  (1) 35 U.S.C. § 102(f) which requires the patent applicant to be the sole inventor of the subject matter sought to be patented; and (2) the obviousness of each claim pursuant to 35 U.S.C. § 103(a).  Specifically, Examiner Smith rejected

the claims as being unpatentable over James E. King's U.S. Patent No. 3,996,819 (hereinafter "'819 Patent") or Alan R. Hanson's U.S. Patent No. 4,671,141 (hereinafter "'141 Patent") in view of U.S. Patent No. 2,521,910 (hereinafter "'910 Patent") and Silas B. McLellan's U.S. Patent No. 3,191,090 (hereinafter "'090 Patent").

Mr. Hildebrand subsequently submitted his amended application on September 15, 1996 protesting both of Examiner Smith's reasons for rejection.  Mr. Raymond Steck, President of Steck Manufacturing, filed a protest because he was paying royalties to Douglas Bundy, the inventor of the allegedly infringing "Lug Off" product sold by Steck Manufacturing.  On September 26, 1996, Examiner Smith again rejected all 14 claims of the amended application: (1) because the claims were rejected pursuant to 35 U.S.C. § 112 as containing subject matter that was not properly described in the specification; (2) as being anticipated by the documents filed in the Steck protest pursuant to 35 U.S.C. § 102(g); and (3) by obviousness pursuant to 35 U.S.C. § 103(a).

On January 27, 1997, Hildebrand submitted a second amended application wherein only minor changes were proposed.  The principal change was a reworking of the language of claim 1 to describe the tapered threading as "helix" in shape.  He attempted to overcome the finding of obviousness by narrowing claims 1 and 14 through a new preamble in combination with a means plus function limitation for the term "threading" where the cutting notches were classified solely as an option.

On February 25, 1997, Examiner Smith once again rejected all 14 claims in the application.  Claims 1 through 14 were rejected under 35 U.S.C. § 112 as containing subject matter not properly described in the specification including the newly added limitation to claims 1 and 14 regarding the "helical blade edges" and "continuously spiraling."

On April 2, 1997, plaintiff filed a third amended application revising claim 1 to include two additional elements: (1) that the opening of the device extended only a portion of the distance between the first end and the second end of the body; and (2) the second end included an opening designed for engagement with conventional elements used in a removal tool where different connecting elements may be secured to the removal tool.  The purpose of the additional elements was to narrow independent claim 1 to distinguish it from the '141 Patent reference.

On September 18, 1997, Examiner Smith once again rejected claims 1, 7 through 14, and 16 on the basis of 35 U.S.C. § 103(a) as being unpatentable over either the '819 Patent or the '141 Patent in view of Bengt M. W. Hanson' U.S. Patent No. 1,469,833 (hereinafter "'833 Patent") and the '090 Patent.  Examiner Smith found that the combination of these prior art patents taught the use of a socket tool with tapered threads to remove threaded connecting device with threads running in the opposite direction.

Ultimately, Mr. Hildebrand filed a fourth amended application with the only proposed change to claim 1 being the addition of the language "means for rotating the body when it is positioned over the threaded connecting device" to the last element of the claim.  However, attached to the amended application was a Rule 132 declaration of plaintiff attaching various exhibits relating to the commercial success of Steck Manufacturing's "Lug Off" product.  Beyond

3

After the issuance of this patent, and indeed continuing after this patent infringement lawsuit was filed, defendant Steck Manufacturing continued to manufacture, distribute, and sell the "Lug Off" product.  In addition, co-defendants Cornwell Quality Tools Company, Matco Tools, Snap-On Tools Company, and Tools USA and Equipment Company continued to resell the "Lug Off" product; defendant MAC Tools continued to sell the "Quick Off" product; and Snap-On Tools held in its inventory and continued to sell 400 or 500 of the "LSR500" product through its mobile distributors.  Mr. Hildebrand has alleged that the "Lug Off," the "Quick Off," and the "LSR500" tools are so identical to his "Screw Off" that they infringe on no fewer than six claims of the '981 Patent:  claims 1, 8, 9, 10, 12, and 14.

Following the issuance of the '981 Patent on April 14, 1998, the defendants conducted their own patent search and located Richard Whalen's U.S. Patent No. 1,127,836 (hereinafter "'836 Patent").  On the basis of the teachings in the '836 Patent and references cited therein,

---

inclusion of the exhibits, it appears that Mr. Hildebrand made little or no initial attempt to connect the commercial success of the "Lug Off" product to the teachings of his invention, nor did Mr. Hildebrand disclose to Examiner Smith that the "Lug Off" product was developed parallel to the development of the "Screw-Off.".

Following the filing of his amended application, Mr. Hildebrand's attorney, Rick Martin, requested an on-site office consultation with Examiner Smith.  Shortly after this meeting, Examiner Smith issued an Interview Summary allowing all 14 claims in the most recent amended application citing the sole ground for allowance stating, "A submitted affidavit and evidence of commercial success is proof of unobviousness and that the claimed device has met a long-felt need and others are now manufacturing and selling the claimed device.  These two facts clearly establish unobviousness of the claimed invention."

as well as teachings and citations not discussed in the patents disclosed to the USPTO during the application process of the '981 Patent, defendants contest the validity of the '981 Patent.

Defendants moved for summary judgment on each of the remaining claims in Mr. Hildebrand's Complaint on the grounds that the patent at issue was:  (1) invalid by anticipation of prior art pursuant to 35 U.S.C. § 102(b); (2) invalid based on obviousness of prior art pursuant to 35 U.S.C. § 103(a); and (3) invalid based on a violation of the duty of candor pursuant to 37 C.F.R. § 1.56.  On April 18, 2003, this Court entered an Order Denying in Part and Granting in Part Defendant's Motion for Summary Judgment, concluding, in pertinent part, that the '981 Patent was invalid because it was obvious pursuant to prior art.   However, on July 15, 2004, this Court granted Mr. Hildebrand's motion to alter or amend judgment pursuant to Rule 59(e), thereby opening this Court's previously issued final judgment as to defendants' motion for summary judgment.

### Jurisdiction and Venue

Federal courts have original jurisdiction over claims arising under federal patent law. 28 U.S.C. § 1338(a).  Venue lies in this district pursuant to 28 U.S.C. § 1400(b).

### Standard of Review

"Claims lacking merit may be dealt with through summary judgment" under Rule 56 of the Federal Rules of Civil Procedure.  *Swierkiewicz v. Soerma N.A.*, 534 U.S. 506, 514 (2002).  The fact that the instant claim sounds in patent law does not alter this analysis.

*Freedman Seating Co. v. American Seating Co.*, 420 F.3d 1350, 1356 (Fed. Cir. 2005).  A district court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Nelson v. Geringer*, 295 F.3d 1082, 1086 (10th Cir. 2002).  "An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant."  *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996).  That "genuine" issue of fact is deemed "material" if it "might effect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Dunbar v. Jackson Hole Mountain Resort Corp.*, 392 F.3d 1145, 1147 (10th Cir. 2004).

When applying the aforementioned standards, the Court must, with respect to each motion, "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party."  *Schutz v. Thorne*, 415 F.3d 1128, 1132 (10th Cir. 2005) (internal quotation omitted).  Procedurally, the moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case, or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden of persuasion at trial.  *Trainor v. Apollo Metal Specialities, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002).

Once this has occurred, the procedural burden shifts to the party opposing summary

judgment, who must go beyond the pleadings and, through the marshaling of evidence, affirmatively establish a genuine issue on the merits of the case. Fed. R. Civ. P. 56(e). The nonmovant must do more than simply deny the veracity of everything offered—show more than a mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Likewise, "[t]he mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient" to create a genuine dispute of material fact. *Herrick v. Garvey*, 298 F.3d 1184, 1190 (10th Cir. 2002). To avoid summary judgment, the nonmoving party must, in the words of the Rule, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The nonmoving party's failure of proof "renders all other facts immaterial," creating no genuine issue of fact, thereby entitling the moving party to the summary judgment it sought. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## Discussion

## I.     Plaintiff's Supplemental Motion For Summary Judgment

While Mr. Hildebrand purports to move for "entry of an order granting summary judgment in his favor," his February 15, 2005 supporting brief is predominantly a response in opposition to the defendants' renewed and supplemented motion for summary judgment. *See Plaintiff's Supplemental Motion for Summary Judgment*, at 1, 2; *Plaintiff's Brief in Support*, at 46. In the Court's view, it is manifest that Mr. Hildebrand seeks an order

7

*denying* defendants' motion for summary judgment, not an entry of summary judgment in his favor on any of these issues. *See Plaintiff's Brief in Support*, at 46 (praying that "this case be set before a jury for damages"); *Plaintiff' Response to Defendant's Motion to Strike/Memorandum in Opposition*, at 29 ("Plaintiff respectfully requests this Court to grant Plaintiff Summary Judgment on the issue's [*sic*] addressed, and set this case before a jury to determine the remaining issues of willful infringement, and amount of damages a Jury finds appropriate."). Accordingly, the Court proceeds under the assumption that Mr. Hildebrand contends that there exist genuine triable issues as to all of the arguments contained in defendants' renewed and supplemental motion for summary judgment. However, before the Court analyzes those arguments, it briefly addresses two components of Mr. Hildebrand's Supplemental Motion for Summary Judgment—specifically, two issues that did not, and do not, survive this Court's April 8, 2003 Order Denying in Part and Granting in Part Plaintiff's Motion for Partial Summary Judgment.[3]

---

[3] On a somewhat related issue, the Court notes that defendants have moved, pursuant to D. Colo. L. R. 7.1(H), to strike Mr. Hildebrand's Supplemental Motion for Summary Judgment in its entirety. Paraphrasing this rule, defendants contend this motion "was to be concise. A verbose, redundant, ungrammatical, or unintelligible Motion may be stricken or returned for revision." *Defendants' Motion to Strike*, at 2. However, the Court finds that Mr. Hildebrand's motion *is* extremely concise. In fact, it is drastically shorter than the defendants' competing motion, and clearly sets forth five issues upon which Mr. Hildebrand's seeks summary adjudication. Perhaps defendants were referring to Mr. Hildebrand's supporting brief, not his motion. Regardless, the Court is disinclined to clarify or remedy defendants' mistake, and declines their Motion to Strike.

On May 1, 2003, Mr. Hildebrand, through his Motion to Reconsider, sought an order vacating "that portion of [the Court's] order granting summary judgment in favor of Defendants on the issue of obviousness."  After some needed clarification, this motion was properly treated as a motion to alter or amend judgment pursuant to Rule 59(e), and ultimately granted as to the Court's April 18, 2003 Order.   What needs no clarification, however, is the fact that Mr. Hildebrand was *not* seeking alteration of this Court's April 8 ruling on Plaintiff's Motion for Partial Summary Judgment, wherein the Court denied plaintiff's motion for summary judgment as to the defendants' "public use" and "on sale" defenses under 35 U.S.C. § 102(b) and counterclaims of tortious interference and unfair competition.[4]  Today, the Court notes that Mr. Hildebrand has not moved for a relief from judgment as to that decision pursuant to Rule 60(b).   The Court finds final judgment unopened as to those issues.  *See, e.g.*, *Cashner v. Freedom Stores, Inc.*, 98 F3d 572, 577 (10th Cir. 1996).   At this stage in the proceeding, Mr. Hildebrand is precluded from rearguing the lack of a genuine issue of material fact regarding the "public use" or "on sale" defenses as well as the tortious interference and unfair competition counterclaims.  As to those claims, the Court finds "there is a genuine issue for trial."  Fed. R. Civ. P. 56.

## II.    Defendant's Renewed and Supplemental Motion for Summary Judgment

---

[4]  That Order granted plaintiff's motion for summary judgment as to the defendants' defenses based on lack of personal jurisdiction, improper venue, acquiesence, and waiver, as well as defendants' counterclaims of estoppel and laches.

9

Nearly fifteen months ago, it was this Court's opinion that Mr. Hildebrand's Rule 59(e) motion "pivot[ed] on . . . the propriety of the proffered evidence of secondary considerations and the proper role of the '836 Patent" as they related to the law of obviousness.  Almost fifteen months later, the Court finds that defendants' motion for summary judgment hinges, predominantly, on the same issues.  Accordingly, the Court eschews a redundant analysis of adjudicated claims, and instead focuses only on those issues open for dispute.  Defendants, seeking to aid the Court in this endeavor, focus their renewed summary judgment motion on two distinct grounds.[5]  First, defendants contend that the '981 Patent is invalid based on obviousness of prior art pursuant to 35 U.S.C. § 103(a).  Second, defendants contend that the '981 Patents is invalid based upon Mr. Hildebrand's violation of the duty of candor under 37 C.F.R. § 1.56.  The Court proceeds to these arguments in turn.

## A.   Invalid As Obvious Over Existing Prior Art:  35 U.S.C. § 103(a)

The obviousness inquiry is ultimately a question of law based upon underlying factual determinations. *Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.*, 411 F.3d 1332, 1336 (Fed. Cir. 2005).  In analyzing obviousness, the Court employs the four-prong test set forth in *Graham v. John Deere Co.*, 383 U.S. 1 (1966).  The *Graham* test requires examination of four considerations:  (1) the scope and content of the prior art;  (2) the level of ordinary

---

[5] However, the Court notes that in this filing, defendants have incorporated all arguments from their prior motions for summary adjudication.

skill in the prior art at the time of invention;  (3) the differences, if any, between the claimed

invention and the prior art; and (4) the objective considerations of nonobviousness, such as

commercial success, long-felt need, failure of others, and unexpected results.  *Id.* at 17; 35

U.S.C. § 103(a); *Iron Grip Barbell Co. v. USA Sports, Inc.*, 392 F.3d 1317, 1320 (Fed. Cir.

2004).   Importantly,  no one factor is controlling; a "totality of the evidence" analysis

governs.  *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538-39 (Fed. Cir. 1983).  That

being so, the Court proceeds to each factor, disposing summarily with those factors that, due

to the lack of additional evidence marshaled by the parties, have not materially changed since

the Court's July 15, 2004 Order Granting Plaintiff's Motion for Reconsideration.

### 1.   *The Scope and Content of the Prior Art*

Relevant prior art consists of those references "reasonably pertinent to the particular

problem with which the inventor was involved." *In re GPAC, Inc.*, 57 F.3d 1573, 1577 (Fed.

Cir. 1995).[6]  At this stage in the litigation, neither party has set forth new facts contesting the

Court's July 14, 2004 determination as to the factors of the scope and content of the prior

art.  However, the Court's consideration of the remaining factors may very well shed further

light on this issue.  At this point, it is safe to say that two material facts relevant to this issue

remain disputed:  (1) the degree of relevance to accord the '836 Patent; and (2) whether

---

[6]  The "Field of Invention" section of the '981 Patent assists in the determination of the
scope of the relevant art by stating:  "The invention relates to a device with the removal of
threaded connecting devices."  U.S. Patent No. 5,737,981.

USPTO Examiner Smith was presented with *all* relevant prior art during his issuance of the '981 Patent.

### 2. *The Level of Ordinary Skill in the Prior Art*

In its Order Granting Plaintiff's Motion for Reconsideration, this Court established that the applicable skill level of the '981 Patent was "low," and determined that the obviousness opinions of expert witnesses Professor Carlson and Mr. Weigl, as well as all affidavits, reports, and testimony were relevant to the consideration of the hypothetical "person having ordinary skill in the art." *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 454 (Fed. Cir. 1985). Declining to revisit this issue, the Court finds that a mechanic such as Mr. Hildebrand would properly understand the significance of the relevant prior art because such art, much like the '981 Patent, does not require advanced understanding or education.

### 3. *Evidence of Secondary Considerations of Nonobviousness*

Secondary considerations are of primary importance in this case. In its Order Granting Plaintiff's Motion for Reconsideration, this Court found that it had erred by initially rendering summary judgment for defendants on the issue of secondary considerations of nonobviousness, and ultimately, clarified three general premises: (1) secondary evidence will be examined in *all* cases and not reserved solely for "close cases," (2) it is error to

12

consider only secondary evidence related to market share, growth therein, or the replacement of prior sales by others;  and (3)  the patentee must demonstrate a nexus between the claimed sales constituting commercial success and the merits of its invention.

In their renewed motion, defendants offer virtually no new factual evidence to persuade the Court that summary judgment on this issue is now warranted.   Instead, defendants' argument is legal in nature, specifically addressing these three points of law.

### a.   *Requirement that Secondary Evidence Always be Considered*

While defendants agree with the Court that secondary evidence should always be considered, they insist that "such evidence should only 'tip the scales' in favor of patentability in close cases."  *Defendants' Renewed and Supplemental Motion for Summary Judgment*, at 9.  In other words, while secondary evidence should always be *considered*, its consideration should never matter unless the case is close.

The Court finds that this argument is simply a regurgitation of that made by defendants while plaintiff's Motion for Reconsideration was pending.  To this argument, the Court responded by setting out the following portion of the Supreme Court's decision in *Graham*:

> Under [35 U.S.C.] § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be determined; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject

13

matter is determined.  Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.  As indicia of obviousness or nonobviousness, these inquiries may have relevancy.

*     *     *

Cook Chemical insists . . . that the long-felt need in the industry for a device such as Scoggin's together with its wide commercial success supports its patentability.  These legal inferences or subtests do focus attention on economic and motivational rather than technical issues and are, therefore, more susceptible of judicial treatment than are the highly technical facts often present in patent litigation.  Such inquiries may lend a helping hand to the judiciary which, as Mr. Justice Frankfurter observed, is most ill fitted to discharge the technological duties cast upon it by patent legislation.  *Marconi Wireless Telegraph Co. of America v. United States*, 320 U.S. 1, 60 (1943).  They may also serve to "guard against slipping into use of hindsight," *Monroe Auto Equipment Co. v. Heckethorn Mfg. & Supply Co.*, 332 F.2d 406, 412 (1964), and to resist the temptation to read into the prior art the teachings of the invention in issue.

383 U.S. at 17-18, 35-36 (Clark, J.).

As the Court has previously stated, nowhere in his opinion did Justice Clark limit the consideration of secondary evidence to only close cases of obviousness.  "On the contrary, his analysis points to the value of secondary evidence in rendering a true and correct ruling insofar as it provides an often technically challenged judiciary with a proper nontechnical walking stick on its journey toward a conclusion."  Order Granting Plaintiff's Motion for Reconsideration, *Hildebrand v. Steck Mfg. Co.*, No. 02-WY-1125-AJ (OES), at 35-36 (D. Wyo. July 15, 2004).  Defendants counter by asserting that *Graham* itself stands for the

14

general proposition that the value of secondary considerations—and thus the importance of the above-quoted material—should only "tip the scales in favor of patentability in close cases." *Defendants' Renewed and Supplemental Motion for Summary Judgment*, at 9.

Standing by its reconsideration Order, the Court finds that defendants' reading of *Graham* is incorrect. When the *Graham* Court referred to a "tip [of] the scales," it was not setting down a guiding principle, but rather, was applying the secondary consideration evidence to the facts of the case. *See Graham*, 383 U.S. at 36. Moreover, it is wholly inaccurate to claim, as defendants do, that *Graham* stands for the proposition that "such evidence [of secondary considerations] should only 'tip the scales' *in favor* of patentability in close cases." *Defendants' Renewed and Supplemental Motion for Summary Judgment*, at 9 (emphasis added). Simply put, the *Graham* Court never said that. *See Graham*, 383 U.S. at 36 (applying the specific facts before it, finding that the secondary consideration "factors do not, in the circumstances of this case, tip the scales of patentability"). Again, *Graham* merely held that secondary evidence did not "tip the scale" when added to the balance of the facts in the case; the Court did not infer that such evidence would *only be useful* when the case was "close."[7] Granted, defendant is correct that in the earlier case of *Dow Chemical Company v. Halliburton Oil Well Cementing Company*, 324 U.S. 320, 330 (1945), the

_____

[7] In fact, it is interesting to note that *Graham* never mentioned the term "close case." Nor did the Court raise any similar phrase.

Supreme Court did make this "close case" argument, but if such an argument is meant to serve as express "support for [the *Graham*] position," as defendants suggest, it is particularly odd that *Graham* fails to cite the *Dow Chemical* opinion even once.

Furthermore, the defendants' argument, pursuant to *Dow Chemical*, that secondary considerations "are relevant only in a close case where all other proof leaves the question of invention in doubt," is inapposite to the matter *sub judice*. *Dow Chem. Co.*, 324 U.S. at 330. This result stems from the Court's previous finding that genuine issues of material fact exist as to, among other subfactors, whether the significance of the '836 Patent—which was not before USPTO Examiner Smith—would render the '981 Patent "clearly obvious."[8]  Hence, unlike the situation in *Dow Chemical*, "all other proof" of obviousness is *not* beyond doubt.

_____

[8]  More specifically, this Court held as follows:

On reconsideration pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, we think the above analysis erroneous.  First, as discussed, the Court did not give proper credence to the secondary evidence of commercial success considered persuasive by the patent examiner. Second, we find that there remain genuine issue[s] of material fact with regard to whether the prior art before Examiner Smith, with the addition of the '836 Patent as relevant prior art, would render the '981 Patent "clearly obvious" so as to overcome the strong presumption of patent validity. *See* 35 U.S.C. § 282.  Upon reconsideration, we do not think the teachings of the '836 Patent are any more clear than the scope of the prior art before Examiner Smith.  As Examiner Smith noted, "'833 Hanson suggests the use of threading; and '090 McLellan suggests the use of opposite threading of the tool"—the Court admits error in concluding that the '836 Patent added anything more to this analysis such that a presumptively "clearly nonobvious" patent could be considered "clearly obvious."

Order Granting Plaintiff's Motion for Reconsideration, *Hildebrand v. Steck Mfg. Co.*, No. 02-WY-1125-AJ (OES), at 35-36 (D. Wyo. July 15, 2004).

And finally,

> [e]ven if this was considered a clear case of obviousness [for summary judgment purposes], the Federal Circuit has since held, where a district court failed to consider secondary evidence in what it determined was a clear case of obviousness, that "[i]t is jurisprudentially inappropriate to disregard any relevant evidence on any issue in any case, patent cases included. . . . [Secondary considerations] must always when present be considered en route to a determination of obviousness."

*American Standard, Inc. v. York Int'l Corp.*, 244 F. Supp. 2d 990, 995 n.1 (W.D. Wis. 2002) (quoting *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538 (Fed. Cir. 1983)) (third and fourth alterations added by *American Standard* court).

While the Supreme Court has yet to revisit this specific issue, the Federal Circuit has, and its approach has been clear:  secondary evidence, when present, "must *always* . . . be considered en route to a determination of obviousness."  *Stratoflex, Inc.*, 713 F.2d at 1538 (emphasis added); *see also In re Sernaker*, 702 F.2d 989, 996 (Fed. Cir. 1983) (citing *In re Fielder and Underwood,* 471 F.2d 640 (C.C.P.A. 1973)) (similar); *In re Mageli,* 470 F.2d 1380, 1383 (C.C.P.A. 1973) (explaining that evidence bearing on issue of nonobviousness "is never of 'no moment,' is always to be considered, and accorded whatever weight it may have").[9]

---

[9] Similar decisions from the Federal Circuit (formerly the United States Court of Customs and Patent Appeals) seem to have narrowed to the brink of extinction the "close case" argument proffered by defendants. *See, e.g.*, *In re Mageli*, 470 F.2d 1380, 1382 (C.C.P.A. 1973) (rejecting the "close case" argument, noting that the *Graham* decision "provided new guidance" in the area of, *inter alia*, secondary considerations); *see also Am. Standard, Inc.*, 244 F. Supp. 2d at 995 n.1 (noting that *Dow Chemical*'s "close case" rationale has since been limited in scope).

Ultimately, defendants' arguments not only fail to hold ground legally but, in the summary judgment context, amount to purely conclusory statements and legal conclusions on which a claim of obviousness is optimistically made to rest. This *post hoc* approach does nothing to satisfy the defendants' burden under Rule 56; as such, the Court need not determine whether plaintiff has satisfied his responsive burden. Fed. R. Civ. P. 56(c), (e). *Cf. Morgan v. Willingham*, 424 F.2d 200, 202 (10th Cir. 1970). Instead of affirmatively pointing to the lack of material facts to support the argument that the teachings of the '836 Patent, when coupled with the prior art before Examiner Smith, would render the '981 Patent *non*obvious, or ushering forward undisputed facts that warrant a conclusion of "clear obviousness," defendants have chosen to set forth an alternate legal argument upon which a conclusion of obviousness *might* rest—if, of course, undisputed facts existed to support such a conclusion. Frankly, perhaps such facts do exist. However, the Court is disinclined to comb the record for an alleged *absence* of material fact as to this issue. This is defendants' job as the party moving for summary judgment. *See* Fed. R. Civ. P. 56(c).[10]

---

[10] Moreover, defendants' repeated quotation of language from this Court's April 18, 2003 summary judgment Order does little to meet defendants' burden under Rule 56(c), particularly in light of the fact that this Order was found to have erred on the issue of obviousness. Quoting a quasi-defunct Order, when coupled with a slightly modified legal argument, is simply not enough under Rule 56. Pursuant to the aforementioned summary judgment standards, the defendants, as the party *moving* for summary judgment, have failed to fulfill their initial responsibility of identifying the portions of the supplemented record which show a lack of a genuine issue regarding evidence of secondary considerations of nonobviousness under 35 U.S.C. § 103(a). See Fed. R. Civ. P. 56(c).

**b.** *The Quality of Plaintiff's Secondary Considerations Evidence*

Defendants read the *Graham* decision as holding that "secondary considerations evidence '*might* be utilized to give light to the circumstances surrounding the *origin* of the subject matter sought to be patented.'" *Defendants' Renewed and Supplemental Motion for Summary Judgment*, at 11-12 (quoting *Graham*, 383 U.S. 17-18) (emphases added by defendants). From this reading, defendants conclude that secondary consideration information must "relate to evidence that was known at the time the invention was made." *Id.* at 12. According to the defendants, the only secondary consideration evidence offered by Mr. Hildebrand came thirteen years after he first conceived of his removal advice, when Mr. Hildebrand became aware of Steck Manufacturing's "Lug Off" product. *See* Hildebrand dep. (III) at 97. Defendants' conclude that because Mr. Hildebrand has offered no secondary consideration evidence relative to this (allegedly) "important time period," no other evidence of secondary considerations should be considered, resulting in summary judgment on this element.

The Court summarily rejects this extrapolation, noting that it differs only slightly from the argument made by defendants in January of 2003. The Supreme Court in *Graham* did not set out a limited amount of secondary consideration factors, nor did it set a particular "secondary considerations" timeline on which future courts and litigants should focus.

19

Rather, in this brief portion of its opinion, the Supreme Court simply noted commonsense examples of secondary considerations that could *be utilized*, presumably, by patent litigants when attempting to prove that their invention was not "obvious." *See Graham*, 383 U.S. 17-18 (stating, in full, that "Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.").

Moreover, contrary to defendants' repeated assertions, consideration of secondary evidence is *not* limited to market share, growth in market share, or replacement evidence, but rather, *all evidence touching the issue* is to be considered. *See, e.g.*, *Kansas Jack, Inc. v. Kuhn*, 719 F.2d 1144, 1150 (Fed. Cir. 1983) ("Facts determinable at a later time may serve to evidence nonobviousness as of the time the invention was made.  An invention that did achieve 'an effect greater' or that produced 'unusual or surprising results' could of course be held to have been nonobvious in light of those facts.  Evidence of such achievements, like evidence of meeting a longfelt need, commercial success, overcoming disbelief, etc., may when present support a conclusion of nonobviousness.") (citing *Stratoflex, Inc.*, 713 F.2d at 1540).

Mr. Hildebrand has offered considerable evidence regarding overwhelming commercial success and the existence of a long-felt need for the device in question.  For example, Mr. Hildebrand sets forth official as well as informal correspondence from persons

such as Raymond Steck, President of Steck Manufacturing, to prospective clients and business colleagues highlighting the substantial revenue generated, responses received, and awards achieved by defendant Steck's "Lug Off" device.[11]   Mr. Hildebrand's Rule 132 Affidavit before the USPTO examiner carefully presented a gross profits estimation of $416,000 for Lug Off's first ten months of sale, and adduced circumstantial evidence of long-felt need satisfied directly by his invention.  *See* Pl.'s Supplemental Summary Judgment Ex. 25, at ¶¶ 1-5.   Somewhat dated financial information—recent to the first quarter of

---

[11]   *See, e.g.*, Pl.'s Supplemental Summary Judgment Ex. 2 (2/16/96 letter from Raymond Steck to Matco Tools representative, noting that the Lug Off "is a product that ended 1995 as *our number five dollar volume product for the year*, even though it was only on the market for the last three months of the year.  It fills a definite need and sells to body shops, mechanical shops, tire and alignment shops, tow truck operators, and salvage yards."); Pl.'s Supplemental Summary Judgment Ex. 4 (4/17/96 letter from Steck to Asst. Product Manager of Mac Tools Corp., stating that "[t]he Steck 'Lug Off!!' is selling extremely well"); Pl.'s Supplemental Summary Judgment Ex. 5 (7/26/96 letter from Steck, noting that "[o]ur Lug Off sockets were introduced to the market in November of last year.  *So far this year* our total invoiced sales of the Lug Off socket sets *exceed $225,000*.  That easily makes the Lug Off the number one dollar volume product in the Steck line."); Pl.'s Supplemental Summary Judgment Ex. 6 ("Steck Talk" August 1996 company newsletter noting that "*Steck has sold over 16,000 sets of Lug Off!!s in just ten months time*"); Pl.'s Supplemental Summary Judgment Ex. 7 (8/3/96 letter from Steck to Product Manager of Mac Tools Corporation, noting that "[o]ur sales figures show that there is a huge market for this product"); Pl.'s Supplemental Summary Judgment Ex. 8 (September 1996 issue of *Motor Magazine*, at 26, including the Lug Off in the "Best of the Best Top 20 Tools Award," explaining that "there were just two criteria for this year's awards: [1] The tool had to be introduced between July 1, 1995 and June 30, 1996, and [2] it had to make you stop and say, 'Wow!  How come nobody ever thought of this before?'"); Pl.'s Supplemental Summary Judgment Ex. 13 (11/4/97 letter from Larry Steck to National Automotive Lines, Inc. representative, noting that "[t]his product has been one of the best selling tools we have ever had," and that "[t]he automotive recovery market is certainly in need of such a tools with the number of wrecks they receive with wheels to be salvaged and no key to get them off").

2002—obtained from Steck Manufacturing Company report the Lug Off's total gross sales at $2,331,081.43.  Pl.'s Supplemental Summary Judgment Ex. 20.

While defendants failed to address the issue of admissibility in their renewed motion or supporting documents, the chance that such evidence would be inadmissible at trial in its current form does not necessarily render it equally inadmissible for summary judgment purposes.  *See, e.g.*, *Adams v. American Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) ("The nonmoving party does not have to produce evidence in a form that would be admissible at trial, but the content or substance of the evidence must be admissible.") (internal quotations omitted); *Comm. for the First Amendment v. Campbell*, 962 F.2d 1517, 1526 n.11 (10th Cir. 1992) ("In opposing a motion for summary judgment, the nonmovant must make a showing that, 'if reduced to admissible evidence,' would be sufficient to carry the nonmovant's burden of proof at trial.") (quoting *Celotex*, 477 U.S. at 327).  Moreover, the Court notes that it must view all factual inferences, including the potentiality of admissible evidence, in a light most favorable the nonmovant—here, Mr. Hildebrand. *Thomas v. Int'l Bus. Machs*., 48 F.3d 478, 485 (10th Cir. 1995); *see also* Fed. R. Evid. 801(d)(2)(B) (evidence is not hearsay if it "is offered against a party and is . . . a statement of which the party has manifested an adoption or belief in its truth"); Fed. R. Evid. 803(24) (residual hearsay exception); *Wright-Simmons v. City of Oklahoma City*, 155 F.3d 1264, 1268 (10th Cir. 1998).

The record demonstrates, and defendants noticeably concede, that Mr. Hildebrand has marshaled "various exhibits relating to the commercial success of the Defendant Steck's product." *Defendants Renewed and Supplemental Motion for Summary Judgment*, at ¶ 17. Defendants attempt to downplay this information by ushering forward deposition statements of Mr. Hildebrand evincing a long wait between conception of his invention and acquisition of commercial success information, as well as the equally delayed onset of a long-felt need for the invention. *See* Hildebrand dep. (III) at 97. Defendants' reliance on these statements is misplaced. As explained above, there is no temporal requirement for establishing "commercial success" secondary evidence. *Kansas Jack, Inc.*, 719 F.2d at 1150. The fact that Mr. Hildebrand failed to set forth detailed evidence of commercial success or long-felt need during the patent application process does not destroy his claim of infringement before this Court. Nor does it negate the factual disputes that engulf this sub-issue.

**c.** *Nexus Between Secondary Considerations and the '981 Patent*

To bolster commercial success and long-felt need as a secondary consideration, the patentee must demonstrate a nexus between the claimed sales constituting commercial success and the merits of its invention. *Kansas Jack, Inc.*, 719 F.2d at 1150. Defendants, pointing to the lack of a genuine issue of material fact, argue that Mr. Hildebrand has failed to establish a nexus between the secondary considerations evidence to the teaching of his invention. Contrary to defendants' argument however, this Court did not conclusively rule

on this issue in its Reconsideration Order.

Once again, in reaching their conclusion, defendants seem to contend that because Hildebrand failed to present evidence to Patent Examiner as to a nexus between the commercial success and the merits of his invention, summary judgment must issue. However, the Court finds little, if any, support for this pigeonholed analysis. Much like the foregoing "commercial success" analysis, new facts can shed considerable light on the existence of a probative nexus. Indeed, it is often the case that "raising the commercial success issue necessarily raised the nexus issue as well." *Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340, 1352 (Fed. Cir. 2000). Mr. Hildebrand's situation is no different. Marshaling forward considerable documentation, plaintiff circumstantially contends that until his invention in 1995, there had been no tool available since the introduction of the locking lug nut in the early 1980s to safely remove locked lug nuts without causing damage to the tool, lug nut, and wheel. In addition, it remains disputed whether Steck's "Lug Off" product was developed parallel in time to that of Hildebrand's "Screw Off." Viewing the facts in a light most favorable to the nonmoving party, the record reflects that Mr. Hildebrand's invention filled an industry need that had not been met for ten to fifteen years, and that the tire and automotive repair market was very receptive to his product, and that plaintiff quickly sold the initial inventory of his invention. *See* Pl.'s Supplemental Summary Judgment Exs. 2-25; Pl.'s Aff. at ¶¶ 2, 3. This evidence and testimony, and the inferences

gathered therefrom, arguably establishe a connection between the commercial success of the defendants' products and the novel benefits of the '981 Patent.  That defendants dispute both the existence and the probative value of this evidence (if indeed it does exist), which may very well succeed in discounting it under governing law.  However, the Court finds that, at the summary judgment stage, this issue is too close to call.  Certainly this is not a case where the nonmovant has, through emergency affidavits or additional depositions, conjured a genuine issue of fact where none existed before.   There remains considerable dispute regarding this issue, making summary judgment inappropriate.

In conclusion, and echoing the Federal Circuit, the Court notes that "evidence of secondary considerations may often be the most probative and cogent evidence in the record. It may often establish that an invention appearing to have been obvious in light of the prior art was not." *Stratoflex, Inc.*, 713 F.2d at 1538.  At best, the Court finds that Mr. Hildebrand's evidence of secondary considerations lives up to that forecast, and could very well be given considerable weight in the obviousness calculus.  But the Court also recognizes that, "[e]nroute to a conclusion on obviousness," the Court

> must not stop until *all* pieces of evidence on that issue have been fully considered and each has been given its appropriate weight.  Along the way, some pieces will weigh more heavily than others, but decision should be held in abeyance, and doubt maintained, until all the evidence has had its say.

*Id.* at 1539.

For summary judgment purposes, all evidence relevant to secondary considerations of

nonobviousness, after three long years, has had its say.  Upon considering these pieces of evidence, the Court finds that, at the very least, genuine issues of material fact preclude summary judgment as to this subfactor of obviousness under 35 U.S.C. § 103(a).

### 4.  *Differences Between Claims at Issue and Prior Art*

Due to the improper deference originally accorded the secondary evidence considered persuasive by Examiner Smith, coupled with the fact that genuine issues of material fact existed regarding whether the prior art before him, with the addition of the '836 Patent, would render the '981 Patent clearly obvious so as to overcome the 35 U.S.C. § 282 presumption, the Court granted Mr. Hildebrand's Motion for Reconsideration as to this issue. Because no additional probative evidence has been ushered by either party on this matter, the Court stands firm to its reconsideration ruling.

### 5.  *Relevancy of the '836 Patent and the Presumption of Validity*

Patent Examiner Smith, in issuing the '981 Patent, found a clear case of nonobviousness in the presence of secondary evidence and the absence of the '836 Patent.[12] After initially vacating this decision, the Court found in its reconsideration Order that its overwhelming reliance upon the '836 Patent was misguided, and indeed, clear error.

---

[12]  In a Notice of Allowability with regard to the '981 Patent, Examiner Smith concluded that  "[t]he submitted affidavit and evidence of commercial success is proof of unobviousness in that the claimed device has met a long felt need and others are now manufacturing and selling the claimed device.  These two facts clearly establish unobviousness of the claimed invention."

Moreover, the Court held that even if the '836 Patent "clearly invalidated" the '981 Patent—an issue in which the Court found material factual dispute—this would alter neither the burden of proof nor the standard of proof under 35 U.S.C. § 282.  While deference is due the USPTO's decision as to evidence properly before it, no such deference is due regarding evidence it did not consider.  *American Hoist & Derrick Co. v. Sowa & Sons Inc.*, 725 F.2d 1350, 1359-60 (Fed. Cir. 1984).  With these standards in mind, the Court found genuine issues of material fact as to whether the '836 Patent, in light of the prior art before Examiner Smith, was of such weight and significance that it simultaneously rebutted the presumption of validity and carried the admittedly heavy burden of proving the obviousness of the '981 Patent.  The Court declines to revisit this issue, noting that the parties will have the chance to do so at trial.

### 6.  *Conclusion*

In sum, little has changed since this Court reopened judgment regarding the obviousness inquiry under 35 U.S.C. § 103(a).  It is an issue that remains disputed and unclear.  Ironically, the only fact beyond dispute is that the parties continue to hotly contest not only individual facts, but the completeness and context of those facts and the inferences or legal conclusions to be drawn.  The *Graham* Court recognized the likelihood of such a result when the law of obviousness is at issue.  Noting the likelihood of "difficulties in applying the nonobviousness test," the Court explained that "[w]hat is obvious is not a

question upon which there is likely to be uniformity of thought in every given factual

context." *Graham*, 383 U.S. at 18.  The content of the voluminous briefings of the parties

is concrete evidence that the obviousness analysis invariably turns on certain facts and

inferences therefrom.   Such a reality itself counsels against summary judgment, as it

accurately outlines what is properly the function of a jury, not the Court.  *See Anderson*, 477

U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of

legitimate inferences from the facts are jury functions, not those of a judge . . . .").

### B.  Invalid by Violation of the Duty of Candor:  37 C.F.R. § 1.56

Patent applicants have a duty to prosecute patents in the USPTO with candor and

good faith.  This duty includes the responsibility to disclose certain information known to

the applicants to be material to patentability. 37 C.F.R. § 1.56(a); *Purdue Pharma L.P.*, 410

F.3d at 695.  "A party asserting that a patent is unenforceable due to inequitable conduct

[under § 1.56(a)] must prove materiality and intent by clear and convincing evidence."

*Purdue Pharma L.P.*, 410 F.3d at 695.  Cumulative evidence of prior art is not "material,"

and its omission is not probative of deceitful intent.  37 C.F.R. § 1.56(b).

At the outset, this Court heeds the Federal Circuit's admonition that inequitable

conduct not serve as "a magic incantation to be asserted against every patentee."  *FMC Corp.*

*v. Manitowoc Co., Inc.*,  835 F.2d 1411, 1415 (Fed. Cir. 1987).  The requirements of 37

C.F.R. § 1.56 are considerably stiff, and motivation-intensive.  *See, e.g.*, *Bristol-Myers*

*Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226, 1239 (Fed. Cir. 2003) ("Intent to mislead does not require direct evidence, and is typically inferred from the facts."). This highly inferential allegation "[cannot be] established upon a mere showing that art or information having some degree of materiality was not disclosed." *FMC Corp.*, 835 F.2d at 1415. Rather, a party who alleges a 37 C.F.R. § 1.56 "failure to disclose" form of highly inequitable conduct must

> offer clear and convincing proof of: (1) prior art or information that is material; (2) knowledge chargeable to applicant of that prior art or information and of its materiality; and (3) failure of the applicant to disclose the art or information resulting from an intent to mislead the PTO.

*Id.*

Citing the decision of *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, defendants contend that prior art or information "is material where there is a substantial likelihood that a reasonable examiner will consider it important in deciding whether to allow the application to issue as a patent." *American Hoist & Derrick Co.*, 725 F.2d at 1362, *cert. denied*, 469 U.S. 821 (1984). However, the objective test this case outlines is now bad law. *See Avco Corp. v. PPG Industries, Inc.*, 867 F. Supp. 84, 89 (D. Mass. 1994). In the late 1980s, the Federal Circuit began to repeatedly criticize the all "too frequent resort to the inequitable conduct defense." *Avco Corp.*, 867 F. Supp. at 89 (collecting cases). As one commentator has noted:

> The Federal Circuit has been very active in the area of fraud, or as it prefers

> to call it, 'inequitable conduct,' that is alleged to have occurred during the prosecution of a patent application before the [Patent and Trademark Office]. A careful review of this activity leaves one with the distinct impression that the court will scrutinize charges of fraud very closely and will be disinclined to uphold an inequitable conduct defense in the absence of truly egregious conduct, such as falsification of data, or a clear showing of intent to deceive.

Robert L. Harmon, *Patents and the Federal Circuit* § 9.5(a), at 285 (2d ed. 1991) (citations omitted) (alteration added by the *Avco* court).

Defendants allege that the failure to disclose three highly relevant prior art known to plaintiff—most importantly, the '836 Patent—was a violation of his duty of candor set forth in 37 C.F.R. § 1.56(a). In direct support of this contention, defendants usher forward the investigation and private correspondence of plaintiff's former patent attorney Mr. Welsh. Mr. Hildebrand unequivocally denies that he possessed the requisite intent to deceive (and points to the complete lack of evidence proffered by defendants on this issue), and submits detailed evidence suggesting the highly cumulative nature of the omitted patents as compared to those actually submitted by Mr. Hildebrand to the examiner. *See* 37 C.F.R. § 1.56(b). Because there exists substantial dispute as the to the initial element of materiality, the Court eschews a detailed analysis of the remaining elements of defendants' "failure to disclose" allegation. The inferential nature of this claim, coupled with the disputed facts that encircle it, counsels against granting defendants' motion for summary judgment. Before even pondering the claim that Mr. Hildebrand possessed the intent to mislead or deceive the

USPTO, there remain genuine issues of disputed fact as to whether the omitted patents were in fact material, or no more relevant than, and indeed merely cumulative of, the prior art presented to the examiner.

Accordingly, for the foregoing reasons, and the reasons articulated in the Court's previous Orders of April 8, 2003 and July 15, 2004, as well as the unaltered portions of its April 18, 2003 Order, it is hereby

**ORDERED** that plaintiff David L. Hildebrand's Supplemental Motion for Summary Judgment, to the extent that it acts as a nonresponsive motion, shall be, and now is, **DENIED** in its entirety.  It is further

**ORDERED** that defendants' Renewed and Supplemental Motion for Summary Judgment shall be, and now is, **DENIED** in its entirety.  It is further

**ORDERED** that defendants' Motion to Strike Plaintiff's Supplemental Motion for Summary Judgment shall be, and now is, **DENIED**.  It is further

**ORDERED** that defendants' motion for summary judgment asserting the '981 Patent is invalid by way anticipation remains **DENIED**.  It is further

**ORDERED** that plaintiff's motion for summary judgment regarding the "public use" and "on sale" defenses of 35 U.S.C. § 102(b) remains **DENIED**.  It is further

**ORDERED** that plaintiff's motion for summary judgment regarding the defendants'

counterclaims of tortious interference and unfair competition remains **DENIED**.

Dated this __5th__ day of October, 2005.


　s/ Alan B. Johnson　　　　　　　　
ALAN B. JOHNSON
UNITED STATES DISTRICT JUDGE
SITTING BY DESIGNATION