

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| DAVID L. HILDEBRAND,<br><br>Plaintiff,<br><br>vs.<br><br>STECK MANUFACTURING COMPANY, INC., ATC PRODUCTS INC., CORNWELL QUALITY TOOLS COMPANY, MAC TOOLS, MATCO TOOLS, SNAP-ON TOOLS COMPANY, TOOLS USA EQUIPMENT COMPANY,<br><br>Defendants. | Case No. 02-WY-1125-AJ (OES) |

## CONTEMPT ORDER

This matter comes before the Court after witnessing the actions of Plaintiff David L. Hildebrand, carried out in open court during the jury trial of the above-captioned matter. Being fully advised in the premises, the Court **FINDS** and **ORDERS** as follows:

### Applicable Law

United States courts have long possessed the power to punish, by fine or imprisonment or both, the contempt of court authority which includes, but is not limited to, "[m]isbehavior of any person in [the court's] presence or so near thereto as to obstruct the administration of justice." 18 U.S.C. § 401(1); *see also id.* § 401(3) ("A court of the United

States shall have power to punish by fine or imprisonment, such contempt of its authority [as d]isobedience or resistance to its lawful . . . order, rule, decree, or command."). The process of contempt has two distinct aspects—one criminal, to punish disobedience; the other remedial, to enforce a decree of the court and to compensate private persons. *In Re Christensen Engineering Co.*, 194 U.S. 458, 459-60 (1904).

Punishment for criminal contempt is punitive in nature, imposed to vindicate the dignity and authority of the court. *Parkhurst v. United States Dep't of Educ.*, 9 Fed. Appx. 900, 904 (10th Cir. 2001) (unpublished decision); *Denver-Greeley Valley Water Users Ass'n v. McNeil*, 131 F.2d 67, 69 (10th Cir. 1942). The process due the recipient of this punishment depends largely on the form of criminal contempt exhibited: direct contempt or indirect contempt. Direct criminal contempt consists of highly contumacious behavior committed in the presence of the court. *Id.* Indirect criminal contempt consists of similar behavior not committed in the court's presence. *Id.* In *United States v. Wilson*, Chief Justice Warren Burger observed that indirect criminal contempt constitutes

> "intentional obstructions of court proceedings that literally disrupted the progress of the trial and hence the orderly administration of justice," even if not delivered disrespectfully. Direct criminal contempt is not so limited. "All that is necessary is that the judge certify that he 'saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court."

*Parkhurst*, 9 Fed. Appx. at 904 (quoting *United States v. Wilson*, 421 U.S. 309, 315-16 (1975); Fed. R. Crim. P. 42(a)).

Federal Rule of Criminal Procedure 42(b) allows for summary proceedings based on direct criminal contempt. *See* Fed. R. Crim. P. 42(b); *Parkhurst*, 9 Fed. Appx. at 904. Unlike indirect criminal contempt, in direct criminal contempt situations "both the court's role as an eyewitness and the desirability of a swift response militate against observance of the usual procedural safeguards." *United States v. Marshall*, 371 F.3d 42, 46 (2nd Cir. 2004); *Owens v. Dancy*, 36 F.2d 882, 885 (10th Cir. 1929) (explaining that when "contempt [is] committed in the presence of the court, [t]here is no need of evidence or assistance of counsel before punishment, because the court has seen the offense. . . . It has always been so in the courts of the common law, and the punishment imposed is due process of law.") (internal quotations omitted).

Nevertheless, because the summary contempt sanction is exempt from the ordinary requirements of a hearing or trial or notice and opportunity to be heard, it is a "rule of necessity, reserved for 'exceptional circumstances' and a 'narrow category' of contempt.'" *In re Pilsbury*, 866 F.2d 22, 26 (2d Cir. 1989) (quoting *Harris v. United States*, 382 U.S. 162, (1965)). To come within the purview of Rule 42(b), the directly contemptuous conduct must somehow interfere with the administration of justice or constitute a substantial interruption of official court business. 18 U.S.C.A. § 401(1) ("Misbehavior of any person in [the court's] presence or so near thereto as to obstruct the administration of justice[.]"); *see also Marshall*, 371 F.3d at 46; *but see Marshall*, 371 F.3d at 48 (noting that criminal contempt sanctions can

3

issue "whether or not a literal obstruction of justice occurs").

However, the standard is practical obstruction, not perpetual outrageousness. A court need not stand idly by while all authority evaporates. Contemptuous conduct sanctionable under Rule 42(b) includes, for example, "disrespectful remarks to the court, opposing counsel, or other parties." *United States v. Lumumba*, 794 F.2d 806, 809 (2d Cir. 1986); *see also People ex rel. Abrams v. Terry*, 45 F.3d 17, 23 (2d Cir. 1995) ("'Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum in their presence, and submission to their lawful mandates.'") (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). In fact, many federal courts have concurred that vituperative outbursts, disrespectful conduct, and egregious language itself constitutes an obstruction of justice warranting a summary contempt sanction. *See, e.g., United States v. Thoreen*, 653 F.2d 1332, 1340 (9th Cir. 1981) (noting that a *pro se* litigant's "outburst . . . constitutes an obstruction because it causes a delay in the time involved in the litigant's delivery of his outburst and in the time necessary to get the court proceedings back on track"); *Gordon v. United States*, 592 F.2d 1215, 1217 (1st Cir. 1979) ("Although the line between insult and obstruction is difficult to discern, there is a point at which mere words are so offensive and so unnecessary that their very utterance creates a delay which is an obstruction of justice."); *see also Marshall*, 371 F.3d at 48 (acknowledging that "criminal contempt sanctions for egregious misconduct in the court's presence" can issue "whether or

not a literal obstruction of justice occurs").

## Factual Background

During the first week and a half of this federal patent trial, Mr. Hildebrand's courtroom conduct and demeanor has been, at times, completely disrespectful and thoroughly disruptive. On numerous occasions, Mr. Hildebrand has interrupted the Court, spoken loudly over the Court, and directed outbursts toward the Court. Mr. Hildebrand has also interrupted opposing counsel repeatedly, often raising his voice so as to loudly speak over opposing counsel during presentation of their cross examination and case-in-chief. Mr. Hildebrand has repeatedly referred to the opposing party, opposing counsel, and Defendants' witnesses by their first names, oftentimes in jest, despite this Court's repeated admonition that Mr. Hildebrand refrain from doing so.[1] This command of the Court was unequivocally and defiantly ignored. It seems that Mr. Hildebrand speaks as often as he wants, as loud as he wants, whenever he wants, without regard to the Court's clear instructions to do

---

[1] In fact, on numerous occasions this Court warned both parties that further instances of disrespectful, egregious, and disruptive behavior would be deemed contemptuous and the subject of possible fine. For example, at one point during the proceedings, this Court notified the parties as follows:

> Why d[on't] we go on the record while the jury is out of our presence. The problem that's gone on throughout this case, really both sides have done it from time to time, is to refer in front of the jury to parties or their attorneys by first names, and repeatedly I have told the parties not to do it. And from here on out, I will consider it when it happens a contempt, and we will keep a ledger and at the end of the case we will assess a suitable fine for each offense.

Trial Transcript, *Hildebrand v. Steck Mfg. Co., et al.*, No. 02-WY-1125-AJ (Oct. 18, 2005).

otherwise.

This conduct, and indeed Mr. Hildebrand's overall courtroom demeanor, came to a boiling point during the early afternoon of Tuesday, October 18, 2005. During his cross examination of Defendants' expert witness Mr. William Wiegl (pronounced 'WHY-g$^{e}$l'), Mr. Hildebrand refused to pronounce the expert's last name correctly after the expert respectfully responded "[m]ay I request that you call me Mr. Wiegl, please?" [pronouncing it as 'WHY-g$^{e}$l']. Ignoring this request, Mr. Hildebrand repeatedly referred to the 79 year-old expert witness as "Mr. Weegle" and "Mr. Waggle." At the close of Mr. Hildebrand's cross examination of Mr. Wiegl, Mr. Hildebrand turned counter-clockwise—towards the members of the jury—and openly referred to Mr. Wiegl as a "fucking asshole." Immediately thereafter, the presiding Court Security Officer (CSO) responded to Mr. Hildebrand's outburst by standing up and turning towards the Bench. But Mr. Hildebrand's tirade was not finished, as he then transferred his anger towards this Court. Mr. Hildebrand loudly expressed his disgust with the Defendants' expert witness. Speaking to the Court, Mr. Hildebrand proclaimed "and by the way Joe I don't think this is cool. I don't understand your reasoning in that, your Honor." Trial Transcript, *Hildebrand v. Steck Mfg. Co., et al.*, No. 02-WY-1125-AJ (Oct. 18, 2005).[2] Mr. Hildebrand then attempted to control the proceedings

---

[2] It is unclear who Mr. Hildebrand was calling "Joe." The Court notes that no officers of the Court, none of the parties and none of the attorney present were so named.

himself, stating loudly "we need to take a break." *Id.* Immediately thereafter the Court began to address the parties, but Mr. Hildebrand would have none of it. He noisily turned his back to the Court and headed towards the courtroom doors. At that point, the Court requested that the CSO escort Mr. Hildebrand out of the courtroom.

Upon returning from a fifteen minute recess, this Court found Mr. Hildebrand's final tirade to be a direct contempt of court, and ordered a fine in the amount of $1,500 to be deposited with the court registry. *See* 18 U.S.C. § 401(1); Fed. R. Crim. P. 42(b). The Court also fined Mr. Hildebrand an additional $100 for his repeated defiance of the Court's command that he refer to Mr. Wiegl by his proper last name. *See* 18 U.S.C. § 401(3); Fed. R. Crim. P. 42(b). These contempt sanctions came after multiple warnings to both parties, Defendants' attorneys, and Plaintiff's attendees that further instances of disrespectful, egregious, and disruptive behavior would be deemed contemptuous and the subject of possible fine.

## Conclusion

After much patience and repeated admonitions by this Court, the conduct of Mr. Hildebrand had become exceptionally disorderly, disrespectful, and defiant under the circumstances. Mr. Hildebrand's final contemptuous outburst, like much of his previous misconduct, occurred in the direct presence of this Court. It came after repeated warnings to both parties that such conduct severely disrupted the ability of the Court to conduct the

proceedings. *See United Mine Workers of America v. Bagwell*, 512 U.S. 821, 826 (1994). Mr. Hildebrand's fine is payable only to the United States. This punishment is punitive and was imposed to restore order and vindicate the authority of the Court. *See Parkhurst*, 9 Fed. Appx. at 904.

Accordingly, for the foregoing reasons, and pursuant to this Court's authority under Title 18, Section 401 of the United States Code and Federal Rule of Criminal Procedure 42(b), it is hereby

**ORDERED** that Plaintiff David L. Hildebrand shall be, and now is, adjudged in **CONTEMPT** of this Court. It is futher

**ORDERED** that Plaintiff David L. Hildebrand pay a fine in the amount of $1,600 to the court registry, located in the office of the Clerk of Court for the United States District Court for the District of Colorado.

Dated this 21st day of October, 2005.

ALAN B. JOHNSON
UNITED STATES DISTRICT JUDGE
SITTING BY DESIGNATION